UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION


**ELISHA ARTER o/b/o C.A.,**

    Plaintiff**,**

vs.                                                             Case No. 8:05-CV-1822-T-EAJ

**JO ANNE B. BARNHART,**
**Commissioner of**
**Social Security,**

    Defendant.
_____/

## **FINAL ORDER**

Plaintiff brings this action pursuant to the Social Security Act (the "Act"), as amended, Title 42, United States Code, Sections 405(g) and 1383(c)(3), to obtain judicial review of a final decision of the Commissioner of Social Security ("Commissioner") denying a claim for Supplemental Security Income ("SSI") on her child's behalf under the Act.[1] Plaintiff also has filed a Motion to Remand for Further Administrative Proceedings to Consider New and Material Evidence. (Dkt. 13)

The undersigned has reviewed the record, including a transcript of the proceedings before the Administrative Law Judge ("ALJ"), the exhibits filed and the administrative record, and the pleadings and memoranda submitted by the parties in this case.

In an action for judicial review, the reviewing court must affirm the decision of the Commissioner if it is supported by substantial evidence in the record as a whole and comports with applicable legal standards. See 42 U.S.C. § 405(g). Substantial evidence is "such relevant

---

[1] The parties in this case have consented to the exercise of jurisdiction by a United States Magistrate Judge. (Dkt. 10)

evidence as a reasonable person would accept as adequate to support a conclusion." Bloodsworth v. Heckler, 703 F.2d 1233, 1239 (11th Cir. 1983). If there is substantial evidence to support the Commissioner's findings, this court may not decide the facts anew or substitute its judgment as to the weight of the evidence for that of the Commissioner. See Goodley v. Harris, 608 F.2d 234, 236 (5th Cir. 1979).

If the Commissioner committed an error of law, the case must be remanded for application of the correct legal standard. See Davis v. Shalala, 985 F.2d 528, 534 (11th Cir. 1993). If the reviewing court is unable to determine from the Commissioner's decision that the proper legal standards were applied, then remand to the Commissioner for clarification is required. See Jamison v. Bowen, 814 F.2d 585, 588 (11th Cir. 1987).

In a child's SSI case, there is a three-step sequential process for determining whether the child is disabled. 20 C.F.R. § 416.924(a)-(d). The first step is determining whether the child is engaged in substantial gainful activity. 20 C.F.R. § 416.924(b). If the child is not engaged in substantial gainful activity, then the second step is to determine whether the child's impairment is "severe." 20 C.F.R. § 416.924(c). This step requires analysis of whether the impairment is more than just "a slight abnormality or a combination of slight abnormalities that causes no more than minimal functional limitations." Id. If it does not cause more than minimal functional limitations, then the impairment is not "severe" and the child is not disabled. Id. Finally, the third step requires analysis of whether the impairment meets, medically equals, or functionally equals in severity a listed impairment in 20 C.F.R. Pt. 404, Subpart P, Appendix 1. 20 C.F.R. § 416.924(d).

If the child's impairment or combination of impairments does not meet or medically equal any listed impairment, the examiner determines whether the impairment functionally equals a listing

2

by evaluating the child's six domains of functioning. The six domains of functioning are: (1) acquiring and using information, (2) attending and completing tasks, (3) interacting and relating with others, (4) moving about and manipulating objects, (5) caring for yourself, and (6) health and physical well being. 20 C.F.R. § 416.926a(b)(1). If the child has extreme limitations in one of the broad areas of development or functioning, or marked limitations in two of such areas of development or functioning, a finding of functional equivalence will be made. 20 C.F.R. § 416.926a(a). Thus, if the child is not engaged in substantial gainful activity, and has a severe impairment, and the child's impairment meets or functionally equals a listing, then the child will be considered disabled and entitled to SSI benefits. 20 C.F.R. § 416.924(b)-(d).

After a claimant is found disabled, the Commissioner periodically evaluates claimant's impairments to determine whether he is still eligible for benefits. 20 C.F.R. §§ 404.1589 and 416.994a. The continuing disability review is composed of three steps. First, the Commissioner considers whether the claimant has experienced "medical improvement" since the previous determination.[2] 20 C.F.R. § 404.994(a)(1). A recipient of benefits may not be taken off the rolls until the Commissioner show medical improvement by substantial evidence.[3] Huie v. Bowen, 788 F.2d 698, 705 (11th Cir. 1986). If there is no medical improvement, the Commissioner will, subject to few exceptions, find the claimant is still disabled. Second, if the Commissioner finds medical

---

[2] Whether a claimant has experienced "medical improvement" since the previous determination is referred to as the "comparison point decision." 20 C.F.R. § 404.1594(b)(7); 20 C.F.R. § 416.994(b).

[3] Medical improvement is defined as any decrease in the medical service of claimant's impairment(s) which was present at the time of the most recent favorable medical decision that the claimant was disabled or continued to be disabled. 20 C.F.R. § 416.994(b)(1)(I). A determination that there has been a decrease in the medical severity must be based on changes or improvements in the symptoms, signs, or laboratory findings associated with the claimant's impairments. Id.

improvement, the Commissioner considers whether the claimant's impairments now meets or medically or functionally equals the severity of the listing it met or equaled at the time of the previous determination. If so, the Commissioner will find the claimant still disabled, unless an exception applies. Third, if the impairment no longer meets or equals the listing it previously met or equaled, the Commissioner considers whether the claimant is currently disabled under the three-step test described above. 20 C.F.R. § 404.994(a)(1). If not, the Commissioner terminates the claimant's benefits.

## I.

Procedural Background

Claimant was awarded childhood SSI benefits on June 15, 1998 based upon a finding that Claimant's condition met the requirements for the childhood Listing 103.03(1)(B) ( asthma) and had met them since the alleged onset date of January 10, 1993 and was therefore eligible for payments beginning January 10, 1993. (T 215-218) At the time of the decision, Claimant was five years of age. (T 216)

Subsequently, as part of the continuing disability review process, the Commissioner determined that Claimant was no longer entitled to SSI because his condition had medically improved as of April 2002; Plaintiff was notified that Claimant's SSI benefits would terminate as of June 2002. (T 227-229) Plaintiff requested an appeal; the challenges to the cessation determination finally resulted in a hearing before the ALJ on January 23, 2004. (T 489-507) In a decision dated February 13, 2004, the ALJ determined that Claimant, then eleven years old, was no longer entitled to SSI benefits as of April 2002 because his condition was not the functional equivalent of a listed impairment. (T 20-31)

Following the ALJ's decision, Plaintiff submitted additional evidence to the Appeals Council regarding Claimant's diagnosis for Attention Deficit Hyperactivity Disorder ("ADHD"). (T 10-13, 438-488)  On July 29, 2005, the Appeals Counsel denied Plaintiff's request for review. (T 6-9)

This appeal presents two grounds for relief: (1) whether the ALJ's determination that Claimant's condition does not meet or medically equal a listed impairment is supported by substantial evidence and (2) whether the ALJ properly determined that Claimant's medical condition, under the six domains of functioning test, is not functionally equivalent to a listed impairment.

Additionally, Plaintiff's Motion to Remand for Further Administrative Proceedings to Consider New and Material Evidence (Dkt. 13) asserts the argument that the record should be supplemented to include medical and school records obtained after the ALJ issued his final decision. Plaintiff claims that the additional medical record demonstrate that Claimant suffers from ADHD and possibly from a seizure disorder. (Dkt. 13 at 5)  Plaintiff contends that additional school records are relevant to Claimant's limitation in the domain of acquiring and using information.

The medical evidence has been discussed in the ALJ's opinion and will not be repeated here except where necessary to address the issues presented.

## II

Since this is a termination of benefits case, the burden is on the Commissioner to show medical improvement.

**A.**    Plaintiff contends that the ALJ's conclusory determination that Claimant's juvenile asthma does not meet or equal the requirements of Listing 103.03(C)(2) is not supported by the evidence or the Listing requirements.

This Listing for asthma imposes the following requirements:

> (1)(A) FEV[1] equal to or less than the value specified in table I of 103.02A; Or
>
> (B) Attacks (as defined in 3.00C), in spite of prescribed treatment and recurring physician intervention, occurring at least every 2 months or at least six times a year. Each inpatient hospitalization for longer than 24 hours for control of asthma counts as two attacks, and an evaluation period of at least 12 consecutive months must be used to determine the frequency of attacks; Or
>
> (C) Persistent low-grade wheezing between acute attacks or absence of extended symptom-free periods requiring daytime and nocturnal use of sympathomimetic bronchodilators with one of the two following:
>
> 1. Persistent prolonged expiration with radiographic or other appropriate imagining techniques evidence of pulmonary hyperfinflation or peribronical disease;
> 2. Short courses of corticosteriods that average more than 5 days per month for at least 3 months during a 12-month period, Or,
>
> (D) Growth impairment.

Listing 103.03(1), 20 C.F.R. pt. 404, subpt. P, App. 1.

Observing that state agency medical specialists found that Claimant's impairments do not meet or equal the requirements of Listing 103.03(1)(C)(2), the ALJ stated that there was no "subsequent medical opinion in the record" stating to the contrary. (T 26) Plaintiff points to this statement as conclusory; however, elsewhere in the opinion, the ALJ cited medical records indicating that Claimant had been hospitalized only once for asthma since June 1998 - in February 2001 - and that he had not required emergency room treatment for asthma since June 1998. (T 25) Based upon an extensive review of Claimant's medical records, the ALJ further noted that "[r]ecords continue to reveal recurrent respiratory problems...they have responded well to treatment and they do not occur on a frequent basis." (Id.)

Plaintiff cites evidence that Claimant used corticosteroids regularly at least "seventeen of the twenty four months between December of 2002 and December 2004" and that Claimant's mother testified that the child's asthmatic condition requires at least monthly, if not twice monthly, physician visits. (Dkt. 11 at 12, T 492, 296, 500)   Additionally, Plaintiff lists the numerous daily medications which Claimant takes, including a Pulmicort inhaler, as well as testimony from his mother that he missed eleven full school days and numerous partial days of school. (T 492)

Defendant responds that it is incumbent upon a claimant relying on an impairment of Listing severity to present medical reports documenting that the condition meets the specific criteria of the Listing including the durational requirement.  When a claimant contends that he has an impairment meeting the listed impairments, he must present specific medical findings that meet the various tests listed under the applicable impairment, or if in the alternative he contends that he has an impairment which is equal to one of the listed impairments, the claimant must present medical evidence which describes how the impairment has such an equivalency.  Bell v. Bowen, 796 F.2d 1350, 1353 (11th Cir. 1986) (citing 20 C.F.R. §§ 404.1525, 404.1526).   Acknowledging this line of authority, Plaintiff contends that the ALJ has a duty to consider if an impairments meets or equals a Listing. Todd v. Heckler, 736 F.2d 641, 642 (11th Cir. 1984).

Worthy of note is the fact that the 1998 determination that Claimant was eligible for SSI benefits rested upon a finding that Claimant's asthma was functionally equivalent to Listing 103.3 (B) due to evidence that Claimant missed school frequently, had been hospitalized 10 to12 times over a two-year period, and had experienced persistent wheezing. (T 217)   Plaintiff now contends that the Commissioner erred in finding that Claimant's condition did not meet or equal Listing 103.3(C).

For the reasons which follow, due to errors of law committed in this case, it cannot be determined based on the present record whether substantial evidence supports the Commissioner's determination that Claimant had experienced medical improvement since the finding of disability. Accordingly, a remand is required for the reasons subsequently discussed.. While recognizing that resolution of conflicting evidence is the province of the Commissioner, given the fact that this is a termination of benefits case requiring the Commissioner to show substantial improvement, the court finds that additional fact-finding by the Commissioner is required.

First, the ALJ failed to develop a full and fair record regarding Claimant's absence of symptom-free periods requiring daytime and nocturnal use of bronchodilators to treat his impairment. At the administrative hearing on January 23, 2004, Plaintiff, who is Claimant's mother, Elisha Arter, testified that the asthma medication works sometimes for her son and sometimes "it doesn't"; she also stated that her son sometimes has problems breathing when he goes out to play and needs to come in for breathing treatments. (T 492) She also testified that he uses his inhaler twenty minutes before PE and "as needed." (T 496) Claimant's mother mentioned that Claimant takes various medications during the day and at night, including Alburterol, Flovent, Rhinocort, and Pulmicort. (T 492, 496, 499-500, 504)

According to Claimant's medical records, from June 1998 through September 2003, Claimant received medical treatment for various ailments, including asthma related symptoms.[4] (T 393-402, 433-436) Claimant's asthma related symptoms ranged from coughing, wheezing, congestion, runny nose, and sore throat. (Id.) Generally, Claimant responded well to these

---

[4] Although Plaintiff cites Claimant's 2004 medical records (T 438-471), this court will only review evidence presented to the ALJ in determining whether there is substantial evidence to support the ALJ's decision. Falge v. Apfel, 150 F.3d 1320, 1323 (11th Cir. 1998).

treatments and continued his use of bronchodilators.[5] (T 393-402, 428-435 ) After receiving medical care for his respiratory problems, Claimant's mother often reported that Claimant was "doing well," "doing better" and "doing great." (T 395, 400, 436)   Indeed, between 1998 and 2002, five to ten months sometimes passed between doctor visits to treat Claimant's asthma. (T 393-402, 433-436)

However, from September 30, 2002 to September 8, 2003, Claimant was treated eight times for asthma related symptoms, including congestion, wheezing, stuffy nose, puffy eyes, coughing, an ear ache, fever and cold symptoms.  (T 429-435)   During this twelve month period, Claimant's medical record reveal that Claimant often used  bronchodilators and took corticosteriods.  (T 428-435)   A physician's continuation of prescribed corticosteriods indicates that the patient is not symptom-free of asthma related problems.  <u>Virola v. Barnhart</u>, 2003 U.S. Dist. LEXIS 22803 *11-12 (S.D.N.Y. Dec. 18, 2003).  Nevertheless, it is unclear from the medical records whether Claimant was taking bronchodilators both day and night during the relevant time frame.  Thus, before making a determination that Claimant's impairment does not meet or equal the asthma Listing, the ALJ should have properly developed the facts relating to Claimant's absence of symptom-free periods and daytime and nocturnal use of bronchodilators.

Second, the ALJ failed to develop a full and fair record regarding Claimant's use of corticosteriods. Based upon medical records from 2002 and 2003, Plaintiff advised doctors that Claimant was using corticosteriods on a regular basis, including Albuterol inhaler and nebulizer, Pulmicort, and Flovent.  (T 428-435)  Nevertheless, it is difficult to ascertain from the medical records whether Claimant meets the Listing requirements of 103.03(1)(C)(2).   In addition to the

---

[5] A bronchodilator is an agent that causes the expansion of the air passages of the lungs. Dorland's Illustrated Medical Dictionary, 191 (26th ed. 1985).  Claimant used Albuterol and Proventil, two types of bronchodilators, on a regular basis.

9

difficulty in reading the handwriting in these medical records, the records reveal incomplete or conflicting data on Claimant's medication history.[6] As such, there is insufficient evidence to determine if Claimant took short courses of corticosteriods that average more than five days per month for a least 3 months during a 12-month period. Under these circumstances, the Commissioner may recontact the treating doctor for additional information or clarification or order one or more consultative examinations. 20 C.F.R § 416.912(e); White v. Barnhart, 287 F.3d 903, 908 (10th Cir. 2002).

To the extent the ALJ relied upon the 2002 disability evaluations of two state medical consultants in reaching his decision that Claimant was not disabled, these physicians did not have an opportunity to review Claimant's 2003 medical records. (T 383, 419) Moreover, Debra M. Ashcraft, M.D. ("Dr. Ashcraft") emphasized in her evaluation that Claimant had "No ER, hospitalizations or oral steriod use in the past 12 months." (T 419, 422) Although Dr. Ashcraft noted that Claimant had two asthma attacks in February 2002 and that Claimant was on a variety of medications, including Flovent, Albuterol inhaler, and Albuterol nebulizer with steriod solution,

---

[6] At the hearing, Plaintiff testified that Claimant was taking "seven medication" for asthma, including Pulmicort, Rhinocort, Albuterol, Flovent, Singular and Zyrtec. (T 492, 499-500) On September 30, 2002, Claimant was prescribed Flovent and Albuterol; Claimant was directed to take the two puffs of the Albuterol before P.E. (T 434) On October 21, 2002 and January 30, 2003, Claimant's doctor prescribed Albuterol aerosol and Pulmicort. (T 433) On May 19, 2003, the records show that the physician apparently approved Albuterol for four months when Claimant "coughs" and "when he gets a cold." (T 431) On May 19, 2003, the records show a prescription for Pulmicort. (T 431) On February 21, 2003, June 30, 2003 August 29, 2003 and September 9, 2003, the medical notes do not identify the names of the medications prescribed to Claimant, but merely note "Rx as ordered " or "Asthma Rx as ordered." (T 429, 430 432) On August 6, 2003, the doctor's notes reflect that "SW will not cover Pulmicort." (T 430) Finally, although the records indicate numerous prescriptions for Pulmicort, Flovent and Albuterol in 2002 and 2003, the medication profile shows only two instances when Claimant was prescribed these medications. (T 428)

Dr. Ashcraft interpreted the asthma Listing as requiring short courses of oral corticosteriods.  (Id.)

In summary, on remand, the ALJ shall specifically address the following issues: (1) whether Claimant had an absence of extended symptom-free periods from asthma related illnesses requiring daytime and nocturnal use of sympathomimetic bronchodilators which meets or equals the asthma Listing for 103.03(1)(C)(2); and (2) whether Claimant's use of coritcosteriods meets or equals the asthma Listing for 103.03(1)(C)(2).[7]

While concluding that remand for further fact-finding is necessary due to the Commissioner's finding that Plaintiff's asthma impairment is not of listing severity, this court expresses no views as to what the outcome of the proceedings should be.  As the reopened hearing, each party should have the opportunity to submit additional evidence on the issues remaining for determination.

---

[7] On remand, the ALJ should also consider whether the Listing requirements for 103.03(1)(C)(2) include the use of inhaled corticosteriods.  There is some disagreement on whether the Listing requirements include only short courses of oral corticosteriods or inhaled corticosteriods. The Listing is silent as to the delivery method of corticosteriods.  Listing 103.03(1), 20 C.F.R. pt. 404, subpt. P, App. 1.  In Correa v. Commissioner of Social Security, 381 F. Supp. 2d 386, 394-396 (D.N.J. 2004), the court held that taking inhaled corticosteriods met the listing because it was unfair to create a distinction between inhaled and oral corticosteriods when the distinction does not appear in the Listing.  However, in Sanchez v.Barnhart, 2005 U.S. Dist. LEXIS 5425 *23-27 (W.D. Wis. March 3, 2005), the court held that the daily use of the inhaled corticosteriod, Pulmicort, did not meeting the listing requirement because medical literature indicated that inhaled corticosteriods were intended for mild persistent asthma whereas oral (and intravenous) corticosteriods were intended for short-term treatment of acute attacks or severe persistent asthma.  The Eleventh Circuit in Johnson v. Barnhart, 2005 U.S. App. LEXIS 19566 * 5-6 n. 2 (Sept. 9, 2005) considered Pulmicort as a corticosteriod in determining whether a claimant met the requirements for Listing 103.03(1)(C)(2), but found, nevertheless, that the claimant did not meet the requirements of that Listing. However, the court was not faced with the same issue before the Correa and Sanchez courts in interpreting the term "corticosteroids" as it appears in the relevant Listing.

**B.** The next issue presented is whether the ALJ erred in evaluating the evidence regarding the effect of Plaintiff's impairment on the six domains of functioning which are analytical standards for measuring whether an impairment is the functional equivalent of a listed impairment.

Social Security regulations allow for a finding of functional equivalence to a listed impairment if the condition results in "marked" limitations of two domains of functioning or an "extreme" limitation in one domain. 20 C.F.R. §416.926a(b)(1)(i-iv)[8] The six domains of functioning are: (1) acquiring and using information; (2) attending to and completing tasks; (3) interacting and relating with others; (4) moving about and manipulating objects; (5) ability to care for oneself; and (6) health and physical well-being. 20 C.F.R. §416.926a (referred to as domains one through six)

The ALJ concluded that Claimant's condition did not meet this test because there was no "extreme" limitation in one domain or two "marked" limitations in two or more domains. (T 30) Specifically, the ALJ found that Claimant had "moderate" limitations in domains one, three, and six and "no" limitations in domains two, four and five. (T 28-30)

According to Plaintiff, the ALJ failed to properly analyze the evidence regarding domains one, three, and six. Much of Plaintiff's argument centers on evidence presented to the first time to the Appeals Council in the form of additional medical records as well as school records. This additional evidence indicates that Claimant missed 32 school days in the 2003-2004 school year, was

---

[8] A "marked" limitation is one which interferes seriously with the ability to independently initiate, sustain, or complete activities. 20 C.F.R. §416.926a(e)(2). An "extreme" limitation interferes very seriously with the ability to independently initiate, sustain, or complete activities. 20 C.F.R. §416.926a(e)(3)

12

recently diagnosed with Attention Deficit Hyperactive Disorder (ADHD) for which he is taking medication, and that his school performance has deteriorated. (T 438-488)

However, as pointed out in the Commissioner's memorandum of law, this court cannot consider evidence presented for the first time to the Appeals Council in deciding whether the ALJ's decision is supported by substantial evidence. Falge v. Apfel, 150 F.3d at 1323.

Thus, this court may consider only the evidence before the ALJ in determining whether substantial evidence supports the ALJ's findings on the issue of disability under the six-domain functional equivalent test.

Because Plaintiff has relied only on the new evidence in arguing that the finding as to domain one was in error, this court finds that the evidence cited by the ALJ is sufficient to constitute substantial evidence to affirm the finding of only moderate limitations on Claimant's ability to use and acquire information.

Thus, on remand, Plaintiff must establish that his condition meets, or is medically equivalent to a listed impairment. The Commissioner's finding as to the lack of functional equivalency is supported by substantial evidence based on the present record.

**C.** Plaintiff contends that additional evidence attached to her motion to remand warrants a remand under sentence six of 42. U.S.C. § 405(g). According to Plaintiff, the additional evidence supports the possibility of a seizure disorder and shows that Claimant also suffers from ADHD. (Dkt. 13-3)

To obtain a remand, a claimant must establish that: (1) there is new, non-cumulative evidence; (2) the evidence is material in that it is relevant and probative so that there is a reasonable possibility that it would change the administrative results; and (3) there is good cause for failure to

13

submit the evidence at the administrative level. Cannon v. Bowen, 858 F.2d 1541, 1546 (11th Cir. 1988)(citation and internal quotation marks omitted). To justify a remand under Title 42, United States Code, section 405(g), the claimant must show that there is "good cause" for the failure to offer the evidence at the administrative level and that there is a reasonable possibility that the evidence would change the outcome Cherry v. Heckler, 760 F.2d 1186, 1192 (11th Cir. 1985).

The Commissioner opposes the motion to remand on the basis that it is not material to the Commissioner's decision because the evidence shows that Claimant had no impairment, or at most, a new impairment or a worsening of Claimant's condition subsequent to the ALJ's decision. (Dkt. 14 at 2-3)   Further, the Commissioner argues that the evidence would not change the ALJ's determination that Claimant suffered a moderate limitation in the domain of acquiring and using information.

The additional evidence offered by Plaintiff includes a summary of an August 2, 2006 neurological evaluation of Claimant performed by Josephine B. Lim, M.D. ("Dr. Lim"). (Dkt. 13-3) Plaintiff advised Dr. Lim that Claimant had "staring spells," but no episodes of loss of consciousness or dizzy spells, no numbness, headaches, visual disturbances or confusional episodes. (Id.) Although Dr. Lim recommended an EEG and CT scan to check for any indications of seizures, he did not find that Claimant suffered from any disabling limitations. (Id.) This medical record does not support any claim of an impairment of a seizure. Indeed, upon examination, Dr. Lim found Claimant neurologically alert, oriented and fluent. Claimant's pupils were equal in size and reactivity, his muscle movement, sensation and coordination were intact, his strength was symmetrical. Thus, this evidence does not warrant a remand.

In addition, Plaintiff submits Claimant's school records for 2005 and 2006 to show that Claimant's suffered from ADHD and that this impairment causes limitations in the domain of acquiring and using information. (Dkt. 13-2 at 2) Plaintiff relies on the 2005 and 2006 school records to demonstrate that Claimant failed most of his subjects and is being retained in the sixth grade. (Dkt. 13-2 at 3)

In the ALJ's February 13, 2004 decision, the ALJ noted that Claimant was not performing at grade level in reading and mathematics. (T 28) The ALJ afforded the Claimant the benefit of the doubt and concluded that Claimant suffered a moderate limitation in the domain of acquiring and using information. (T 28, 30)

Plaintiff was diagnosed with ADHD in March 2004, after the ALJ's decision. (T 443; Dkt. 11 at 3) Evidence pertaining to a new impairment or worsening condition will not be the basis for a remand. Caulder v. Bowen, 791 F.2d 872, 876 (11th Cir. 1986). To the extent Plaintiff is asserting that Claimant's condition has seriously deteriorated as a result of the diagnosis of ADHD, the appropriate remedy is to initiate a new claim for benefits as of the date that the condition aggravated to the point of constituting a disabling impairment. Callahan v. Barnhart, 186 F. Supp 2d 1219, 1230 (M.D. Fla. 2002).

For these reasons, this court finds the proffered evidence falls short of the materiality requirement of 42 U.S.C. §405(g) for a new evidence remand and there is no reasonable possibility that the additional evidence would alter the ALJ's findings. Therefore, the motion to remand will be denied.

On remand, however, on the Listings issue, both parties shall be permitted to address the issues remaining for determination.

**CONCLUSION**

Accordingly, and upon consideration, it is **ORDERED** that:

(1)   the motion for 405(g) remand (Dkt. 13) is **DENIED**; however, the decision of the Commissioner terminating Claimant's Supplemental Security Income benefits is reversed and this case remanded for further administrative proceedings consistent with the foregoing discussion;

(2)   the Clerk of the Court shall enter final judgment pursuant to 42 U.S.C.§ 405(g) and direct this case be closed as this is a "sentence four remand." See Shalala v. Schaefer, 509 U.S. 292, 302-03 (1993); Newsome v. Shalala, 8 F.3d 775, 779-80 (11th Cir. 1993); and

(3)   Should the Commissioner on remand award Claimant past-due benefits, Plaintiff may apply for attorneys fees within 30 days from the date of the Commissioner's determination. Bergen v. Comm'r of Social Security, 454 F.3d 1273, 1277 n 2 (11th Cir. 2006).

**DONE AND ORDERED** in Tampa, Florida on this  9th day of February, 2007.

ELIZABETH A JENKINS
United States Magistrate Judge

16